## FRIEND v. SOUTHERN STATES LIFE INS. CO.

No. 9804—Opinion Filed June 29, 1920.

Rehearing Denied Dec. 21, 1920.

(Syllabus by the Court.)

**1. Insurance—Life Insurance Policy—Nature of Contract.**

A policy of life insurance, without any qualifying provisions, is not a contract of insurance for a single year, with a privilege of renewal from year to year by paying the annual premiums. It is an indivisible and continuous contract of insurance for life, subject, when so stipulated, to discontinuance and forfeiture for nonpayment of any installment of premiums. Such premium installments are not intended as the consideration for the respective years for which they are paid, but each installment is part consideration of the entire insurance for life.

**2. Insurance—Policy—Rule of Construction.**

If a policy of insurance is susceptible of two constructions, the one is to be adopted which is most favorable to the insured.

**3. Same.**

If the language used in a policy is ambiguous and susceptible of two constructions,

one of which will give the policy effect, and the other render it void, that construction should be adopted which will make the policy effective.

**4. Same.**

If the terms of the policy are clear, consistent, and unambiguous, no forced or strained construction can be indulged in to give effect to the policy.

**5. Same.**

The various provisions of the policy should be considered and construed together, and a construction placed upon the policy consistent with its terms and provisions.

**6. Same.**

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.

**7. Same — Life Policy — Construction—Forfeiture.**

The policy in the instant case was dated September 7, 1907, and the first year's premium in the sum of $483.90 was paid, and it contained a provision that the policy had a loan value of $320 at the end of the first year, and contained an automatic nonforfeiture clause which provided, in substance, that if any premium should not be paid when due the premium should be charged against the policy as a loan, and, if the loan value of the policy was not sufficient to pay the total premium due, it should be applied on payment of the premium and extend the policy a shorter period of time. On September 7, 1908, the second premium was due and unpaid, and the policy on said date had a loan value of $320; it then became the duty of the company under the automatic nonforfeiture clause to apply the $320 to the payment of the premium, which would extend the policy with a paid-up premium for approximately nine months, and deceased having died on the 1st day of March, 1908, and within the time that the $320 would fully pay up and extend the policy, held, the policy was in full force and effect at the death of the insured, and the beneficiary thereof is entitled to recover the amount of said policy, less the amount chargeable against the policy as a loan.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Julia A. Friend against the Southern States Life Insurance Company on life insurance policy. Judgment for defendant, and plaintiff brings error. (Plaintiff having died, the cause was revived in the name of Charles W. Friend, administrator.) Reversed and remanded.

J. H. Everest and R. M. Campbell, for plaintiff in error.

A. J. Orme and Wilson, Tomerlin & Threlkeld, for defendant in error.

McNEILL, J. This action was commenced in the district court of Oklahoma county by

Julia A. Friend against the defendant in error to recover the sum of $10,000 upon a life insurance policy issued by the defendant in error on the life of Joseph A. Friend, she being the beneficiary named therein. A copy of the insurance policy was attached to the petition. The defendant in error filed a demurrer to the petition, which was sustained by the trial court, and Julia A. Friend elected to stand upon the petition, and judgment was entered dismissing the cause of action at her cost. From said judgment, she appealed. Upon appeal the judgment of the trial court was reversed and the case remanded, with instructions to overrule the demurrer. The case is reported as Friend v. Southern States Life Insurance Co., 58 Okla. 448, 160 Pac. 457.

After the case was reversed, the insurance company filed an answer setting up several defenses. The case was tried to the court upon practically an agreed statement of facts. The trial court again rendered judgment in favor of the insurance company, from which judgment this appeal has been taken.

Julia A. Friend is now deceased, and the case has been revived in the name of Charles W. Friend, as the administrator of her estate. The parties, for convenience, will be referred to as they appeared in the trial court. A determination of the question presented upon appeal involves a construction of three provisions of the policy, which are as follows:

"Automatically Nonforfeitable.

"If any premium hereon shall not be paid when due, any withdrawable surplus shall first be applied to pay the same, and the remainder of the premium, if any, shall be charged against the policy as a loan if the respective loan value be sufficient to enable such advance, after providing for the existing loans and accrued interest; Provided, that if not sufficient to cover the entire remainder, a premium for a shorter period, but not less than a monthly premium, shall be provided for, if the available loan value be sufficient. Notice of such application of surplus and advance shall be mailed to the insured, and at any time while this policy is thus sustained in force, the payment of premiums may be resumed.

"Loans and Surrender Privileges.

"At any time upon demand, after this policy shall have been in force for one full year and provided all premiums shall have been paid up to the next anniversary of this Policy, the Company will advance, against the sole security of this Policy, upon the execution by the owner of the Certificate of Advances required by the Company, up to the respective sum named in the Table of Cash Loans, including all sums then advanced with accrued interest upon the same. The interest upon all such advances shall be at the rate of 5 per cent. per annum.

"Table.

| End of Year | Cash Loan | Paid-up Insurance | Period of Years | Extension Months |
| --- | --- | --- | --- | --- |
| 1 | 320 | --- | - | - |
| 2 | 556 | 560 | 1 | 7 |

The portion of the table showing the cash loan value and time of extension of the policy as to the other years is not material, and therefore that part of the table is not copied in this opinion.

Upon the trial of the case it was stipulated and agreed that the policy was issued on the 7th day of September, 1907, and the same provided for an annual premium of $483.90, payable on or before the 7th day of September of each year thereafter during its continuance, and that the first premium was paid, but the second premium, due September 7, 1908, was not paid, and in March, 1909, the insured died, leaving Julia A. Friend as his surviving widow and the beneficiary named in the policy.

For reversal, the plaintiff contends that the policy, according to the table, at the end of the first year had a cash loan value of $320, and that, notwithstanding the fact that the insured defaulted in the payment of the second premium, due September 7, 1908, yet it was the duty of the company, under the automatically nonforfeitable clause contained in said policy, to apply the loan value of the policy to the payment on that premium, and by so applying the same to payment of the second premium the policy was continued in force and effect, and was in fact in force and effect at the death of the insured. The defendant contends that, by construing the automatically nonforfeitable clause in connection with the section on loan and surrender privileges and the table attached to the policy, the policy had no loan value at the end of the first year and would not have such value until after the payment of the second premium, and the second premium not having been paid, the insured was in default, and being in default, the company relied upon certain facts to show an abandonment of the policy by the insured and a forfeiture of the same by the company. The material question, and the one that determines the rights of the parties, is settled when it is determined whether the policy had a loan value of $320 at the end of the first year, and from the conclusion we reach, the other questions will not be considered.

The rights of the parties under these two provisions of the policy and the loan table must be determined by certain cardinal rules of law that apply to the construction of life insurance policies.

This court in the former appeal, in considering this policy, announced a rule which

governs in construing such contracts, and said:

"A policy of life insurance, without any qualifying provisions, is not a contract of insurance for a single year, with a privilege of renewal from year to year by paying the annual premiums. It is an indivisible and continuous contract of insurance for life, subject, when so stipulated, to discontinuance and forfeiture for nonpayment of any installment of premium. Such premium installments are not intended as the consideration for the respective years for which they are paid, but each installment is part consideration of the entire insurance for life."

The second cardinal rule to be followed is: If a policy of insurance is susceptible of two constructions, the one is to be adopted which is most favorable to the insured. Taylor v. Insurance Company of North America, 25 Okla. 92, 105 Pac. 354; Federal Life Insurance Co. v. Lewis, 76 Okla. 142, 183 Pac. 975; Standard Accident Ins. Co. v. Hite, Adm'r, 37 Okla. 305, 132 Pac. 333.

Third: If the language used in the policy is ambiguous and susceptible of two constructions, one of which will give the policy effect, and the other render it void, that construction should be adopted which will make the policy effective. Capital Fire Ins. Co. v. Carroll et al., 26 Okla. 286, 109 Pac. 535.

Fourth: If the terms of the policy are clear, consistent, and unambiguous, no forced or strained construction can be indulged in to give effect to the policy. First National Bank v. Maryland Casualty Co., 162 Cal. 61, 121 Pac. 321.

Fifth: The various provisions of the policy should be considered and construed together, and a construction placed upon the policy consistent with its terms and provisions. Liverpool, London & Globe Ins. Co. v. Kearney et al., 180 U. S. 132, 45 L. Ed. 460.

Sixth: Another rule is provided by statute (section 951, Rev. Laws 1910). The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.

The table attached to the policy discloses that the policy at the end of the first year had a cash loan value of $320; then, if we look to the automatic nonforfeitable clause to see what the rights of the parties were under that clause, we find it provides, in substance, that if any premium has not been paid (which in the instant case was the premium for the second year), the company should automatically charge the premium against the policy as a loan, and if the loan value of the policy is not sufficient to cover the entire remainder or premium due to extend the policy for the full year, it will be applied to extend the policy for whatever time the loan value will extend the policy at a monthly premium. This section, when construed with the table, does not seem ambiguous. The table discloses that at the end of the first year the policy has a loan value of $320, but does not disclose that there is any time the policy can be extended; but if we give force and effect to the table relating to the loan value and read the same in connection with the automatic nonforfeiture clause, the loan value must be used as a premium to extend the policy for a certain period of time. The defendant, however, contends that in construing the automatic nonforfeitable clause, the clause designated "Loan and Surrender Privileges," and the "Table" together, the proper construction to be placed upon said policy is that the policy had no loan value at the end of the first year unless the second premium had been paid.

Let us consider the different provisions of the policy, keeping in mind that this policy is not a policy from year to year, nor are the premiums or installments simply payments for extending the policy from year to year, but that each installment is a part of the consideration for the entire insurance for life, and that a failure to pay the premium, under this policy, does not forfeit the same. With these principles in mind, what was the status of the parties at the end of the first year, or on September 7, 1908? According to the table attached to the policy, the policy had a cash loan value of $320 on said date. This was a credit in favor of the insured. By the terms of the policy, the premium for the second year became due and the same was an indebtedness against the policy in the sum of $483.90. On the credit side the insured had a credit, to wit, the value of the policy, or $320. On the debit side there was a premium due of $483.90. The credit was not sufficient to pay the premium due on the policy for a full year. But it was sufficient, if applied on the premium, to pay the premium on the policy for practically nine months, and under the nonforfeiture clause it was the duty of the company to so apply the same.

Let us now construe the policy according to the contention of the defendant, to wit: That by reason of the "Loan and Surrender" clause, the policy had no loan value until after the second year's premium was paid. In the first place, to give the policy such a construction would be to read into the nonforfeiture clause on the table the following: "Providing the second year's premium has been paid." The nonforfeiture clause and the "Loan and Surrender" clause deal with separate and distinct subject-matters; neither is

explanatory of the other, nor does one depend upon the other, nor limit the meaning of the other. The provision in the "Loan and Surrender" clause does not attempt to say that the policy shall not have a loan value of $320 until the second year's premium is paid, but it does say that the company will not advance the money on the policy until that premium is paid. The reason for this is apparent. As stated heretofore, at the end of the first year the policy had a loan value of $320. There was due for the ensuing year a premium of $483.90. If the company would advance the loan value of the policy, or $320 in cash, without the premium being paid, the money advanced would be equal to the value of the policy and the policy would have no loan value. The premium being unpaid, the policy would be delinquent and subject to be forfeited. The company has provided in the loan and surrender clause, not that the policy has no loan value at the end of the first year, but that it will not advance the policy holder that amount of money unless the premium is paid.

Business judgment no doubt requires that life insurance companies dealing with numerous parties must always deal with them upon the theory that the insured always has a credit with them, and while he may use this credit to extend his policy, or the credit may be used in paying the next year's premium on the policy, still the company will not advance the full cash loan value of the policy, and thereby permit the insured to be holding a policy which is in default, and each day will make the insured further indebted to the company; hence the reason that, although the policy has a value of $320 at the end of the first year, the company will not advance any amount to the insured until he has renewed his policy for the ensuing year, but will permit him either to use the value of the policy in paying the premium on the policy, or, under the automatic clause, if he fails to pay the premium, the company will automatically extend the policy that length of time. The parties by this contract have agreed: First, that at the end of the first year this policy had a loan value of $320; second, that if the premium for the second year is not paid when due, this $320 shall be applied on the premium of the policy, and the policy will be a paid-up policy for such time as $320 would pay the premium; third, the policy provides the company will advance $320 in cash and will accept a certificate of advance for the same at any time after the second year's premium is paid.

It is apparent that the policy had a value at the end of the first year of $320, for the reason that by paying $163.90 and signing a certificate of advance for $320 it would pay

the premium for the second year. While it is true, the construction the defendant in error places upon the policy is not quite this broad, yet the result is the same. Defendant in error contends that it is necessary to pay $483.90 as the second year's premium in cash, and then sign a certificate of advance for $320, and the company will return $320. If the insured desired to pay the second year's premium and would tender $163.90 and a certificate of advance in the amount of $320, the result reached and the position of the parties would be the same as though the insured paid the company $483.90 and signed a certificate of advance, and the company eo instanti returned him $320; or, in other words, in the instant case the insured would have paid out in actual cash $483.90 on the first year's premium and $163.90 on the second year's premium and the policy would be charged with an advance of $320.

A very similar question was discussed by the Supreme Court of the United States in the case of Brooklyn Life Ins. Co. v. Dutcher, 24 L. Ed. 410, as follows:

"To this there is an obvious and, we think, a conclusive answer. The part of the annual premium for which a note was to be given was, in substance and effect, a loan of so much money by the company to the assured. It was so described in the receipt of the company for the premium, and in the contract of the parties. If the money had been actually paid to the company, and the next money loaned back, and the note then taken, there would not have been room even for a quibble upon the subject. Why go through such a ceremony? Why not go directly, as was done, to the end in view? The intent which animated the conduct of the parties determines its character. The receipt and contract both show that the transaction was regarded by both parties as a payment of money to one and a loan back to the other, for which the note was taken. The receipt was for the full amount of the premium. The note and loan were mentioned by way of memorandum, as a distinct matter. The law never requires an idle thing to be done. It would clearly have been this, and nothing else, if the assured had actually handed over the money and note with one hand, and eo instanti, with the other taken back the money. The company had the power to waive the actual production and payment of the money, and to receive a note bearing interest as the same thing."

We therefore conclude that, by first construing this policy to be an insurance for life, and that each payment or premium paid is not a payment for simply one year, but is a part of the consideration for the entire policy, and by applying the rule that if two constructions can be placed upon the policy, one of which renders it void, and the other

continues it in full force and effect, the policy shall be given that construction which extends the policy in force, and the further rule that if the contract is ambiguous, the construction must be given which is most favorable· to the insured—by applying these principles, it must be apparent that this policy means exactly what is stated in the table, that at the end of the first year the policy had a loan value of $320, and under the non-forfeiture clause it was the duty of the company to apply that amount on the premium and keep the policy paid up as long as $320 would pay the premium, and it is conceded, if it had a value of $320 on September 7, 1908, and the company had applied this to the premium, the policy would have been fully paid up and in force at the death of the deceased.

The case being tried upon an agreed statement of facts, there being no controversy over the evidence, and the judgment of the trial court being founded upon an erroneous interpretation of the policy, it therefore follows that the case should be reversed and remanded, with instructions to render judgment in favor of the plaintiff and against the defendant for the amount of the policy and interest, less the amount charged against the policy as an advance, and it is so ordered.

HARRISON, V. C. J., and PITCHFORD, JOHNSON, and RAMSEY, JJ., concur.